Opinion filed December 8, 2005












 
 
  
 
 







 
 
  
 
 




Opinion filed December 8, 2005

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-05-00201-CV 

 

                                                    __________

 

                                    IN RE PEARL MAE WILLIAMS

 



 

                                            Original
Habeas Corpus Proceeding

 



 

                                              M
E M O R A N D U M   O P I N I O N

 

This is an original habeas corpus proceeding.  The trial court held Pearl Mae Williams in
contempt for failing to deliver a Jeep to her attorney and ordered her held in
jail for 60 days.  Williams filed a
petition for writ of habeas corpus with this court.  We set a bond and have now considered her
petition.  Because the trial court found
Williams in contempt without providing due process, we grant the writ.

                                                               Background
Facts

This original proceeding arises out of a divorce
action.  The trial court held a hearing
on September 28, 2004.  The following day
the court faxed a letter to both attorneys with its findings and rulings.  The letter was unsigned when faxed, but was
signed later that day and was included in the clerk=s
file.  Williams acknowledged that her
attorney timely received the court=s
letter.








The letter includes the following provision: AThe Court orders the Jeep sold....Jeep
is ordered surrendered to [David Hall=s]
office[1]
no later than 5:00 p.m., Thursday, September 30, 2004.@  Respondent=s
attorney, Kenneth L. Maxwell, was asked to prepare the Final Decree of Divorce.

Maxwell did so; but, in the interim, the parties
conducted post-hearing settlement discussions, and the decree was not submitted
to the trial court until November 16.  It
was signed that same day.  The decree
states that it was Ajudicially
PRONOUNCED AND RENDERED@
on September 28.  (Emphasis in
original)  The trial court acknowledged
in a subsequent hearing that this statement was incorrect and that it made no
findings at the end of the September 28 hearing.

Williams did not turn over the Jeep.  Instead, she traded it in for a Mustang on
November 17.  Her former husband
apparently did not realize that she no longer had the Jeep because he filed a
petition for enforcement on December 14 complaining of Williams=s failure to turn over the Jeep and
asking the court to order her to deliver the Jeep.  The petition refers to the Final Decree of
Divorce but not the September 29 letter.

The trial court held a hearing on the petition for
enforcement and found Williams in contempt on January 20, 2005.  The court then set a hearing for February 17,
2005, to determine the appropriate sanction and/or punishment.  That hearing was continued until June 17,
2005.  The trial court assessed 60 days
confinement in the county jail and awarded Williams=s
ex-husband damages of $4,500 and attorney=s
fees of $750.

                                                Williams=s Request for Habeas Corpus

Williams raises four challenges to the contempt
finding, alleging lack of notice and impossibility of performance.  We need not address impossibility of
performance because we find that there was a lack of sufficient notice that
Williams might be held in contempt and that her punishment might be confinement
in jail.

Williams contends that she did not have full and
unambiguous notice of the accusation of contempt, notice or knowledge of the
order she was charged with violating, and notice in the petition that she had
failed to comply with the September 29 fax.








Williams was entitled to due process which
generally requires reasonable notice and an opportunity to be heard.  See In re Johnson, 150 S.W.3d 267, 271
(Tex.App. - Beaumont 2004, orig. proceeding). 
The process due is measured by a flexible standard depending on the
practical requirements of the circumstances. 
 Mathews v. Eldridge, 424
U.S. 319, 333 (1976).

Williams faced constructive contempt charges.  Thus, she was entitled to full and complete
notification of the subject matter and the when, how, and by what means she was
guilty of the alleged contempt.  Ex
parte Edgerly, 441 S.W.2d 514, 516 (Tex.1969); see also Ex parte
Brister, 801 S.W.2d 833, 835 (Tex.1990)(Cook, J., concurring)(amongst the
due process rights accorded an alleged contemnor is the right to reasonable
notice of each alleged contumacious act). 
She was also entitled to present a defense to the alleged contempt.

Williams=s
due process rights are impacted by whether she faced civil or criminal
contempt.  Criminal contempt is
punishment for past conduct.  Civil
contempt is coercive, and the contemnor may obtain his release by complying
with the court=s
order.  In re Houston, 92 S.W.3d
870, 876 n.2 (Tex.App. - Houston [14th Dist.] 2002, orig. proceeding).  Because she was being punished for past
conduct and had no opportunity to purge herself of her contempt, Williams faced
criminal contempt proceedings. 
Consequently, Williams was entitled to heightened constitutional
protections.  See International Union,
United Mine Workers of America v. Bagwell, 512 U.S. 821, 827
(1994)(criminal penalties may not be imposed on someone who has not been
afforded the protections that the constitution requires of such criminal
proceedings).[2]

In Ex parte Vetterick, 744 S.W.2d 598
(Tex.1988), the relator was the administrator of an estate.  The trial court entered an order requiring
him to appear and show cause why he should not be ordered to turn over estate
assets.  The court held a hearing and, on
that same day, entered an order compelling him to deliver property and provide
a sworn accounting.  The court also
scheduled a second hearing for approximately two months later.  At this second hearing, the court held the
relator in contempt for failing to comply with the original turnover
order.  Id.








The supreme court reversed the contempt order,
finding that the relator had received insufficient notice.  Specifically, the court wrote:

In a case involving conduct outside the presence
of the court, due process requires that the alleged contemnor receive full and
unambiguous notification of the accusation of any contempt.  This notice should be by show cause order
or equivalent legal process personally served on the alleged contemnor, and
it should state when, how and by what means the defendant has been guilty of
contempt.  (Emphasis added)

 

Id. at 599.  The
court found that this standard was unsatisfied because no motion for contempt
was filed and because no show cause order or equivalent legal process was
issued before the second hearing.  Id.[3]

Courts have also held that a party facing criminal
contempt charges is entitled to advance notice of their potential
punishment.  See In re Smith, 981
S.W.2d 909, 911 (Tex.App. - Houston [1st Dist.] 1998, no pet=n). 
In Smith, the movant asked for civil contempt, but the trial
court assessed a criminal contempt punishment. 
The Houston Court of Appeals reversed, holding that the relator=s due process rights were violated when
the trial court went beyond the requested relief.  

There was no motion filed for an order and hearing
for Williams to show cause why she should not be held in contempt, and no such
order was issued.  Williams was not
afforded notice that, if she were held in contempt, the trial court might
assess jail time or punishment.  Because
Williams was not personally served with this notice, her due process rights
were violated, and her writ of habeas corpus is granted.

                                                                    Court
Costs

Williams=s
final issue contends that she is entitled to payment of court costs based upon
her indigency pleadings.  Williams filed
a verified motion for a free reporter=s
record and a sworn statement of indigency with the district clerk.  The trial court denied her motion.  Because this is an original proceeding,
TEX.R.APP.P. 20.1(c)(2) required that the affidavit be filed with the Court of
Appeals.  The trial court, therefore, had
no jurisdiction to grant her request. 
Williams=s final
issue is overruled.

 








                                                                     Conclusion

We grant the writ of habeas corpus and order
Williams discharged.       

 

 

JIM R. WRIGHT

CHIEF JUSTICE

 

December 8, 2005

Not designated for publication. 
See TEX.R.APP.P. 47.2(a).

Panel consists of: Wright, C.J., and McCall, J.

W. G. Arnot, III, retired effective July 31, 2005 and is,
therefore, not participating.











     [1]Williams=s attorney.





     [2]The
required constitutional protection depends on whether the criminal contempt is Aserious@ or not.  Serious
criminal contempt involves imprisonment for more than six months.  See Taylor v. Hayes, 418 U.S. 488, 495
(1974)(party facing serious criminal contempt charges has a right to a jury
trial).  Because Williams=s sentence was 60 days, those additional provisions are
not applicable.





     [3]The
supreme court=s opinion indicates that other equivalent legal process
refers to something such as a subpoena which compels the relator=s attendance.  Ex
parte Vetterick, 744 S.W.2d at 599.